# In the United States Court of Federal Claims

No. 16-872C
Filed: September 22, 2017

```
*******************************************
                                          *
                                          *     Employee Retirement Income Security Act
                                          *        ("ERISA"), 29 U.S.C. § 1001;
                                          *     Rules Of the United States Court of Federal
PETER TURPING, et al.,                    *        Claims ("RCFC")
                                          *        12(b)(1)(Jurisdiction),
        Plaintiffs,                       *        12(b)(6) (Failure To State A Claim),
                                          *        23(a) (Class Certification);
v.                                        *     Statute Of Limitations, 28 U.S.C. § 2501;
                                          *     Takings Clause, Fifth Amendment to the
THE UNITED STATES,                        *     United States Constitution, Tucker Act
                                          *     Jurisdiction, 28 U.S.C. § 1491.
        Defendant.                        *
                                          *
                                          *
                                          *
                                          *
*******************************************
```

**Douglas E. McKinley, Jr.**, Law Office of Douglas E. McKinley, Jr., Kennewick, Washington, Counsel for Plaintiffs.

**Albert Salvatore Iarossi**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN**, *Chief Judge.*

## I.    FACTUAL BACKGROUND.[1]

During World War II, the Hanford Nuclear Reservation (the "Hanford Site") was established by the United States Army Corps of Engineers (the "Army Corps") in the State of Washington to produce nuclear material for use in atomic weapons. Am. Compl. ¶¶ 6–10. After the War, the Hanford Site continued operations, but was managed by the Atomic Energy Commission (the "AEC"). Am. Compl. ¶ 11. In January 1975, the Energy Research and

---

[1] The relevant facts were derived from the February 16, 2017 Amended Complaint ("Am. Compl. ¶¶ 1–146") and the three exhibits attached to the Government's April 7, 2017 Motion To Dismiss ("Gov't Mot. Exs. A–C").

Development Administration (the "ERDA") assumed responsibility for managing the Hanford Site. Am. Compl. ¶ 12. On October 1, 1977, the United States Department of Energy ("DOE") assumed responsibility for managing the Hanford Site. Am. Compl. ¶ 13.

Between 1947 and 1987, the AEC, the ERDA, and DOE contracted certain work at the Hanford Site to the General Electric Company ("GE") and other subcontractors. Am. Compl. ¶ 15. When a subcontractor was replaced or work was transferred between subcontractors, the affected employees continued to work in the same positions, in the same location, and continued to receive the same pay and benefits. Am. Compl. ¶ 19. Over the years, however, these transfers created an administrative burden for DOE and successor subcontractors, when pensions earned by those employees were transferred from prior subcontractors to new subcontractors. Am. Compl. ¶ 20.

In 1987, DOE awarded a contract for the management and operation of the Hanford Site to the Westinghouse Hanford Company ("WHC") and instructed WHC to establish a separate pension plan for all subcontractor employees, known as the Hanford Multi-Employer Pension Plan (the "MEPP"). Am. Compl. ¶¶ 15, 23–25. The MEPP required, and continues to require, that any employees transferred from one Hanford Site subcontractor to another would have their pension benefits calculated to reflect their total years of service at the Hanford Site. Am. Compl. ¶ 33. These requirements are set forth in Article 29 of the MEPP:

> In the case of a Termination for Transfer,[2] an Employee who becomes a Participant hereunder shall be entitled to credit for eligibility under Article 2, Benefit Service under Article 3[,] and Vesting Service under Article 6[,] to such degree as shall be determined by the Plan Administrator in order to assure that the Participant receives a benefit at Normal Retirement Date which is reflective of his Years of Service on the Hanford Reservation. The Plan's Administrator shall be adopted by a rule[,] pursuant to Article 11.

Gov't Mot. Ex. A at 91.

The MEPP was and is administered by an independent Plan Administrator. Am. Compl. ¶ 40. The Plan Administrator may not amend the MEPP terms, without prior DOE approval. Am. Compl. ¶ 41. In addition, the Plan Administrator may not take any action that has a financial impact on the MEPP, without the prior written approval of DOE. Am. Compl. ¶ 42.

---

[2] When contract work was transferred from one subcontractor to another, individual employees were terminated by the prior subcontractor, but re-hired by the new subcontractor. Am. Compl. ¶¶ 33–34. This process is referred to in the MEPP as a "Termination For Transfer." Am. Compl. ¶¶ 33–34.

In 1996, DOE issued a Request for Proposals (the "Solicitation") to obtain proposals from private corporations willing to assume management of the Hanford Site contract ("Project Hanford Management Contract").[3]  The Solicitation provided that:

> [i]n filling employment positions for work under the contract, other than management positions, the Contractor and Major Subcontractors, agree to hire employees who are or can become qualified by the time the work commences from the workforce of the incumbent contract and its integrated subcontractors (Westinghouse Hanford Company, ICF Kaiser Hanford, and Boeing Computer Services Richland).  The Contractor and Major Subcontractors shall assume the assets, liabilities, and other obligations and *continue the defined benefit pension plans . . . of the incumbent contractor and integrated subcontractors.*

Am. Compl. ¶ 38 (emphasis added).  At this time, all employees of WHC, and its subcontractors Boeing Computer Services, Richland ("BCSR"), and Kaiser Engineering Hanford ("KEH"), were full participants in the MEPP.  Am. Compl. ¶ 63.

On August 6, 1996, however, DOE announced that the Project Hanford Management Contract would be transferred from WHC, and its subcontractors BCSR and KEH, to a successor contractor, Fluor Daniel Hanford, Inc. ("FDH") and new subcontractors.  Am. Compl. ¶ 27.  The transfer was scheduled for October 1, 1996.  Am Compl. ¶ 27.

On August 30, 1996, some WHC, BCSR, and KEH employees were provided with an "Offer Letter" from Lockheed Martin Services, Inc. ("Lockheed"), an "Enterprise-Company" that was to be a subcontractor of FDH.  Am. Compl. ¶ 64.  The August 30, 1996 Offer Letter provided that, "[i]f your employee benefits for this position are different than the current site benefit program, a summary is enclosed"; but no summary was enclosed.  Am. Compl. ¶ 65. The Offer Letter, however, instructed WHC, BCSR, and KEH employees that they were required to sign and return the letter by September 9, 1996, if they wanted to accept employment with Lockheed.  Am. Compl. ¶ 68.  The Offer Letter also instructed that employees who agreed to be transferred to Lockheed were not allowed to be employed by any other Hanford Site contractor.  Am. Compl. ¶ 69.

In September 1996, many former employees of WHC, BCSR, and KEH accepted employment at Lockheed (the "Lockheed employees") and were informed that "upon their retirement, they would not receive the retirement medical benefits, retirement death benefits, and retirement pension compensation" previously afforded under the MEPP.  Am. Compl. ¶¶ 70, 77.  Thereafter, several Lockheed employees attempted to withdraw their MEPP benefits, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001.  Am. Compl. ¶ 78.[4]

---

[3]  The February 16, 2017 Amended Complaint does not specify the date when DOE issued the Solicitation, and no party filed a copy of the Solicitation.

[4]  The named Plaintiffs in this case did not withdraw funds from the MEPP.  Am. Compl. ¶ 89.

On September 30, 1996 and prior to the transfer of the Project Hanford Management Contract, DOE issued Department of Energy Order 350.1 ("DOE Order 350.1").  Am. Compl. ¶ 31.  DOE Order 350.1 provided that,

> DOE approval is required prior to implementing any change to a pension plan covering prime cost reimbursement contracts for management and operation of DOE facilities and other contracts when designated. Changes shall be in accordance with and pursuant to the terms and conditions of the contract.

Gov't Mot. Ex. C at 29.

On October 10, 1996, DOE announced that all employees who continued to work at the Hanford Site would remain in the MEPP.  Am. Compl. ¶ 86.

On January 15, 1997, however, the MEPP was amended so that, upon retirement, Lockheed employee benefits would be calculated using an employee's highest five year salary, with Lockheed or a prior employer, instead of by the total years that an employee worked at the Hanford Site. Am. Compl. ¶¶ 87–88.  Thereafter, and "on numerous occasions," the Lockheed employees were informed by DOE and the MEPP Plan Administrator that they could not challenge the new changes to their benefits until after they retired.  Am. Compl. ¶ 89.

On July 28, 2009, the CEO and President of FDH sent a letter to DOE requesting two amendments to the MEPP.[5]  Am. Compl. ¶ 54.  On August 12, 2009, a DOE Contracting Officer approved only one of the two proposed amendments.  Am. Compl. ¶ 55.  Subsequently, the Plan Administrator incorporated the amendment into the MEPP.  Am. Compl. ¶ 56.

In October 2014, Peter Turping retired from Lockheed and notified the Plan Administrator that he intended to begin withdrawing pension benefits from the MEPP.  Am. Compl. ¶ 92.  The Plan Administrator, however, declined to calculate Mr. Turping's pension benefits, based on his entire term of service at the Hanford Site and refused to recognize Mr. Turping's health care and life insurance benefits.  Am. Compl. ¶ 93.

## II.   PROCEDURAL HISTORY.

On July 25, 2016, Mr. Turping, on behalf of Dick Cartmell, Philip Isaacs, Greg Brown, John Bongers, and other similarly situated persons ("Plaintiffs"), filed a Complaint in the United States Court of Federal Claims. ("Compl.").  The July 25, 2016 Complaint requests certification of a class of individuals who were transferred from WHC, BCSR, and KEH to Lockheed and subsequently had their MEPP pension benefits reduced.  Compl. ¶¶ 89–108.  The July 25, 2016 Complaint also requests breach of contract damages under the Tucker Act or, in the alternative, alleges that DOE's actions with respect to the MEPP was an uncompensated taking under the Fifth Amendment for which they are entitled to just compensation.  Am. Compl.  ¶¶ 114–15.

---

[5] The February 16, 2017 Amended Complaint does not allege the nature of these amendments.

On November 17, 2016, the Government filed a Motion To Dismiss arguing that the Complaint should be dismissed for lack of jurisdiction, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6).  ECF No. 8.

On February 16, 2017, Plaintiffs filed a Consent Motion To Amend the July 25, 2016 Complaint, together with the First Amended Complaint, as an attachment.  ECF No. 11.  On February 17, 2017, the court granted Plaintiffs leave to amend.  ECF No. 14.  The Amended Complaint alleges that DOE formed a "contract in fact" with Plaintiffs via the creation of the MEPP and subsequently breached that contract when Plaintiffs were transferred to Lockheed and altered the method by which their MEPP pension benefits were calculated.  Am. Compl. ¶¶ 131–34.  The Amended Complaint also alleges that DOE breached a fiduciary duty owed to Plaintiffs under the MEPP.  Am. Compl. ¶¶ 143–46.  In the alternative, the Amended Complaint alleges that DOE's actions also were an uncompensated taking.  Am. Compl. ¶¶ 135–42.[6]

On April 7, 2017, the Government filed a renewed Motion To Dismiss the Amended Complaint ("Gov't Mot."), pursuant to RCFC 12(b)(1) and 12(b)(6), together with three exhibits: the MEPP, restated as of January 1, 1994 ("Gov't Mot. Ex. A"); the MEPP, restated as of October 1, 1996 ("Gov't Mot. Ex. B"); and the September 30, 1996 DOE Order 350.1 ("Gov't Mot. Ex. C").  ECF No. 19.

On May 6, 2017, Plaintiffs filed a Response to the Government's April 7, 2017 Motion to Dismiss ("Pl. Resp.").  ECF. No. 20.  On May 22, 2017, the Government filed a Reply ("Gov't Reply").  ECF No. 22.

## III.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate "any claim against the United States founded either *upon the Constitution*, or any Act of Congress or any regulation of an executive department, or upon any *express or implied contract* with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (emphases added).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . .  [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker

---

[6] Because Plaintiffs responded to the November 17, 2016 Motion To Dismiss with a Consent Motion To Amend the July 25, 2016 Complaint, on May 8, 2017, the court dismissed the November 17, 2016 Motion To Dismiss as moot.  ECF No. 21.

Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). Plaintiff also must make "a nonfrivolous allegation that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

In a breach of contract case, "the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). A "well-pleaded allegation" of an express or implied-in-fact contract "is sufficient to overcome a challenge to jurisdiction." *Trauma Serv. Grp., Inc. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). In addition, it is well established that the "Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction." *Jan's Helicopter Serv.*, 525 F.3d at 1309 (citing *Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005)).

### B.     The Relevant Standards Of Review.

#### 1.     Standard Of Review For A Motion To Dismiss For Lack Of Jurisdiction, Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [RCFC] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

#### 2.     Standard Of Review For A Motion To Dismiss For Failure To State A Claim On Which Relief May Be Granted, Pursuant To RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

### C. The Government's April 7, 2017 Motion To Dismiss The February 16, 2017 Amended Complaint.

#### 1. The Government's Argument.

The Government argues that Plaintiffs' breach of contract claim should be dismissed for lack of jurisdiction, because the Amended Complaint fails to allege the essential elements of a valid contract with the Government, *i.e.*, (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority on the part of the Government agent entering the contract. Gov't Mot. at 8 (citing *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)).

Although the Amended Complaint alleges that a combination of the MEPP, DOE regulations, and "non-specific" DOE actions and policies created an implied-in-fact contract, none of those documents evidence any intent by DOE to be bound in contract. Gov't Mot. at 9. The MEPP, as it existed prior to Plaintiffs' October 1, 1996 transfer to Lockheed, expressly states that it was established for the benefit of "Eligible Employees" by their "Employers," *i.e.*, the subcontractors hired by DOE to manage the Hanford Site. Gov't Mot. at 9–10 (citing Gov't Mot. Ex. A at 7). Neither the United States nor DOE is now Plaintiffs' employer. Gov't Mot. at 10. Nor does DOE Order 350.1 provide evidence of intent to contract, because it is a policy statement and, as a matter of law, "regulatory proclamations are insufficient to create contractual obligations." Gov't Mot. at 11 (quoting *Anderson v. United States*, 344 F.3d 1343, 1357 (Fed. Cir. 2003)). After the management of the Hanford Site was assumed by WHC in 1987, the MEPP must be read as establishing a pension plan by a private company. Gov't Mot. at 10. In any event, the MEPP does not evidence any intent by Lockheed to grant Plaintiffs the right to continued participation in the MEPP. Gov't Mot. at 10.

The Amended Complaint also fails to allege any offer or acceptance on behalf of the Government. Gov't Mot. at 12. The MEPP is an agreement between employees and private employers. In contrast, the Solicitation was an offer by DOE to potential Hanford Site contractors. Gov't. Mot at 12–14.

In addition, the Amended Complaint fails to allege consideration for DOE's alleged promise that Plaintiffs would continue to be covered by the MEPP, although their employers were not in privity with the Government nor a party to the MEPP. Gov't Mot. at 14. This is not surprising since Plaintiffs worked for private employers, *i.e.*, either WHC, BCSR, or KEH, and subsequently Lockheed, not the Government. Gov't Mot. at 14. And, the Amended Complaint fails to allege that any authorized Government representative agreed to the terms of the alleged implied-in-fact contract. Gov't Mot. at 17.

In any event, the court does not have jurisdiction to adjudicate the breach of contract and the Takings Clause claims alleged in the Amended Complaint, because they are barred by

the Tucker Act's six year statute of limitations, 28 U.S.C. § 2501, since both accrued in 1996, when Lockheed informed Plaintiffs that their years of service at Lockheed would not count in calculating their pension and other employee benefits. Gov't Mot. at 18–20. Although Plaintiffs argue that their injury did not accrue until they retired and were denied benefits, the "right to sue is not suspended until subsequent events shall show the amount of damage or loss." Gov't Mot. at 21 (quoting *Fallini v. United States*, 56 F.3d 1378, 1381–82 (Fed. Cir. 1995)).

Specifically, the Takings Clause claim alleged in the Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). Gov't Mot. at 25. The Amended Complaint alleges that Plaintiffs' deprivation of retirement benefits was "contrary to the Government's own policies [and] the regulations of an executive department." Am. Compl. ¶ 1. But, the United States Court of Appeals for the Federal Circuit has held that "a claim premised on a regulatory violation does not state a claim for a taking." Gov't Mot. at 25 (citing *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1369 (Fed. Cir. 2005)). In short, a Takings Clause claim requires that a challenged Government action must be "authorized." Gov't Mot. at 25–26; *see also Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001) ("[A]n uncompensated taking and an unlawful government action constitute two separate wrongs that give rise to two separate causes of action[.]") (internal quotation marks and alterations omitted). In any event, Plaintiffs' right to participate in the MEPP is not a cognizable property interest, because: (1) deprivation of a contractual right gives rise to a breach of contract claim, not a Takings Clause claim; and (2) the Amended Complaint fails to allege that DOE established any property interest founded in the participation in the MEPP, or an interest that could not be changed or modified in the future. Gov't Mot. at 28–29.

## 2. Plaintiffs' Response.

Plaintiffs respond that the terms of the MEPP require that any changes must be approved by DOE, because the MEPP was "funded in its entirety with money provided by the Government," and, in a March 19, 2007 letter, DOE advised Plaintiffs that "headquarters (HQ) [was] responsible for establishing the Department's policy and implementation for contractor pensions and benefits." Pl. Resp. at 2 (quoting Am. Compl. ¶ 47). In addition, the MEPP was established for the benefit of DOE, as it lowered administrative costs by setting up a pension plan independent of the Hanford Site contractors. Pl. Resp. at 2.

Plaintiffs also argue that they have established all the requisite elements of an implied-in-fact contract with DOE. Pl. Resp. at 6, 13. DOE's intent to contract is evidenced by the fact that DOE inserted a "high five clause" into the MEPP in January 1997, pursuant to which DOE promised that Hanford Site contractor employee benefits would be calculated, based on the average of an employee's highest five year salary. Pl. Resp. at 4, 14. DOE's intent is further demonstrated by the fact that Article 29 in the MEPP provided that each employee of the Hanford Site contractors would be provided with a benefit, "reflective of his Years of Service on the Hanford Reservation," regardless of future employment. Pl. Resp. at 7. These benefits specifically were provided when an employee was "Terminated for Transfer," *i.e.*, an employee was terminated by an outgoing contractor and rehired by an incoming contractor, because DOE determined that the retention of experienced employees at the Hanford Site was "in the best interest of the Government." Pl. Resp. at 2; *see also* Gov't Mot. Ex. A at 91 (1/1/1994 MEPP).

Plaintiffs add that only the Government could make this promise, because "no other party has or ever had the ability to control both the treatment and classification of its employees by the incoming contractor and the treatment and classification of those same employees within the MEPP." Pl. Resp. at 7. As such, the MEPP was an offer. Plaintiffs accepted that offer and provided consideration by working for Lockheed. Pl. Resp. at 15–16. And, the MEPP was executed by a DOE officer, acting within his/her authority to bind the Government in contract. Pl. Resp. at 17.

Additionally, although DOE Order 350.1 cannot "by itself" form a contract, it is "compelling" evidence that DOE intended to contract with Plaintiffs to provide them with benefits, in the event they were transferred between contractors. Pl. Resp. at 18. DOE's intent is also evidenced by the fact that the Solicitation provided that the incoming contractor would be bound by the terms of the MEPP. Pl. Resp. at 18. The most compelling evidence of intent, however, is the fact that DOE continued to provide MEPP benefits to thousands of Hanford Site employees, when they were transferred to different contractors. Pl. Resp. at 19. Lockheed Employees were the only group to lose their benefits, as a result of the 1996 transfer. Pl. Resp. at 20.

With respect to the statute of limitations, DOE repudiated the contract in 1996, but did not breach the contract until each individual Plaintiff retired. Under the terms of the MEPP, pension benefits were to be paid beginning at the "Normal Retirement Date," based on each participant's "Years of Service on the Hanford Reservation." Pl. Resp. at 24. Moreover, the Government was not required to perform, until each Plaintiff retired. As a matter of law, a promisor's renunciation of a "contractual duty before the time fixed in the contract for . . . performance" is a repudiation. Pl. Resp. at 25 (quoting 4. A. CORBIN, CONTRACTS § 959 (1951)). For this reason, the United States Supreme Court has held that that the Government's repudiation of a contractual duty does not trigger the six year statute of limitations under 28 U.S.C. § 2501. *See Franconia Assocs. v. United States*, 536 U.S. 129, 144 (1993). Although an injured party may elect to treat the repudiation as a breach, it may decide to wait until the date performance commences, triggering the statute of limitations. *Id.* at 143 ("[A] repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'" (quoting *Roehm v. Horst*, 178 U.S. 1, 13 (1900))). In the alternative, the Government is equitably estopped from asserting the statute of limitations defense, because Plaintiffs were advised by the Government in 1996 that they could not dispute their post-retirement benefits until they retired. Pl. Resp. at 26.

In the alternative, Plaintiffs argue that their contractual rights under the MEPP constituted a cognizable property interest protected by the Fifth Amendment. Pl. Resp. at 28 (citing *Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Rights against the United States arising out of a contract with it are protected by the Fifth Amendment.")). Moreover, the MEPP expressly stated that the Plan Administrator was a "fiduciary." Pl. Resp. at 30. Although the Plan Administrator was allowed to amend the terms of the MEPP, it was required to do so as a fiduciary, *i.e.*, an agent with the duty to act in the best interest of the beneficiary. Pl. Resp. at 31. These obligations also extend to DOE, since under the MEPP, DOE had complete control over the Plan Administrator. Pl. Resp. at 30–31.

### 3.    The Government's Reply.

The Government replies that the MEPP is a contract between private government contractors and their employees, not a contract between those employees and a federal agency. Gov't Reply at 3 (citing Gov't Mot. Ex. A at 7). Therefore, at most, the Amended Complaint alleges that the MEPP is part of an implied-in-fact contract between Plaintiffs and DOE. Gov't Reply at 3. But, the Amended Complaint does not allege the essential elements of an implied-in-fact contract. The fact that DOE was in the "best position" to enforce Article 29 does not evidence any intent to contract with Plaintiffs. Gov't Reply at 4. Moreover, the Amended Complaint "leaves the [c]ourt guessing" as to when the alleged implied-in-fact contract was formed, *i.e.*, "in 1987[,] when the MEPP was created, at some point in the subsequent years[,] or in 1996[,] when the [Project] Hanford [] [M]anagement [C]ontract was re-competed[?]" Gov't Reply at 4. The Amended Complaint alleges that the MEPP is only part of an implied-in-fact contract, the provisions of which were delineated by the Solicitation and the issuance of DOE Order 350.1, on September 30, 1996. Gov't Reply at 6. But, the Amended Complaint alleges that DOE repudiated the contract in August or September 1996, *prior* to the issuance of DOE Order 350.1, on September 30, 1996. Gov't Reply at 6. Assuming that a contract was formed in 1987, when the MEPP was established, there should be contemporaneous evidence of the Government's intent to contract, but the Amended Complaint only cites events that took place almost ten years after the contract would have been formed. Gov't Reply at 7.

Plaintiffs' argue that the Government's intent to contract is also evidenced by DOE "continu[ing] to pay money into the MEPP to fund the increasing benefits owed to Plaintiffs[,]" but the Government counters that "neither DOE nor the Government has ever paid any money into the Hanford MEPP. The MEPP is funded entirely by private government contractors." Gov't Reply at 7 n.2 (citing Pl. Resp. at 14).

In addition, the Amended Complaint fails to allege that there was an unambiguous offer and acceptance. Gov't Reply at 8. In fact, "essentially every material term required to form a binding contract is missing from the [A]mended [C]omplaint's allegations," including those sufficient to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Gov't Reply at 8 (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 33(2) (1981) ("RESTATEMENT")). Although Plaintiffs argue that all the essential terms are contained in Article 29 of the MEPP, in fact, Article 29 does not speak to any mutual promises or consideration on the part of the parties. Gov't Reply at 8.

The Amended Complaint also fails to allege that the alleged contract was agreed to by a Government representative with the authority to bind the United States in contract. Gov't Reply at 9. Specifically, the Amended Complaint alleges only that a DOE Contracting Officer "approved" changes to the MEPP in 2008 and 2009; but, these actions occurred more than a decade after DOE allegedly repudiated the contract in 1996. Gov't Reply at 9. But, the Amended Complaint did not allege that any Government official, with authority, agreed to a contract either in 1987, when the MEPP was formed, or in 1996, when Plaintiffs voluntarily transferred to Lockheed. Gov't Reply at 9.

The Government adds that the anticipatory repudiation doctrine also does not apply, because the alleged breach is not "wholly anticipatory." Gov't Reply at 11. The United States

Court of Appeals for the Federal Circuit has held that the statute of limitations begins to run when an anticipatory breach is accompanied by contractual nonperformance. Gov't Reply at 11 (citing *Kinsey v. United States*, 852 F.2d 556, 558 (Fed. Cir. 1988) ("If, however, the breach is not wholly anticipatory because it involves some contractual nonperformance, the statute of limitations begins to run immediately.")). In this case, the Amended Complaint alleges that the 1996 repudiation was accompanied by contractual nonperformance, when DOE nominally forced Plaintiffs to remain in the MEPP and refused to allow them to withdraw their pensions, in violation of the terms of the MEPP. Gov't Reply at 11 (citing Am. Compl. ¶ 86). Moreover, the Government was alleged to have barred any challenge to Lockheed's decision not to abide by the MEPP, until after Plaintiffs retired, although Article 11.7 of the MEPP requires the Plan Administrator to provide a claim appeal procedure. Gov't Reply at 11 (citing Gov't Mot. Ex. A at 52). The Amended Complaint also alleges that the terms of the MEPP were altered to reduce Plaintiffs' accrued benefits, despite the fact that Article 19 of the MEPP provides that a future modification or amendment may change a participant's accrued benefits. Gov't Reply at 12. Nevertheless, Plaintiffs argue that the Government should be equitably estopped from asserting the statute of limitations defense, because the doctrine of equitable tolling does not apply to Tucker Act cases. Gov't Reply at 13 (citing *Adde v. United States*, 81 Fed. Cl. 415, 420 (Fed. Cl. 2008)).

With respect to the alleged Takings Clause claim, Plaintiffs failed to rebut, or even address, the Government's argument that a Takings Clause claim may not rest on unauthorized conduct. Gov't Reply at 14. In any event, Plaintiffs' Takings Clause claim is based on the existence of a property right to continued participation in the MEPP, but neither the MEPP nor DOE regulations conferred such a right. Gov't Reply at 14.

Finally, Plaintiffs' breach of fiduciary duty claim should be dismissed, because Plaintiffs have failed to establish a contract imposing any fiduciary duty on the United States with respect to Plaintiffs. Gov't Reply at 15.

> **4.   The Court's Resolution.**
>
> > **a.   Whether The Statute Of Limitations Bars The Claims Alleged In Plaintiffs' February 16, 2017 Amended Complaint.**

Pursuant to 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereof is filed within six years after such claim first accrues." Although the statute of limitations is considered, in other contexts, an affirmative defense that may be waived, the United States Supreme Court has held that section 2501 is "jurisdictional," because of the Government's waiver of sovereign immunity. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) ("This Court has long interpreted the court of claims limitations statute as . . . 'jurisdictional.'")

Therefore, as a matter of law, a claim "accrues" for purposes of section 2501 when "all the events have occurred that fix the alleged liability of the [G]overnment and entitle the claimant to institute an action." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011). In the case of a breach of a contract, "a cause of action accrues when the breach occurs." *Alder*

*Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). Section 2501, however, does not "create[] a special accrual rule for suits against the United States." *Franconia Assocs. v. United States*, 536 U.S. 129, 145 (1993). Therefore, "the repudiation doctrine [applies] in its traditional form when evaluating the timeliness of suits governed by § 2501." *Id.* at 131. As such, "[a] takings claim accrues, when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355–56 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008) (internal quotation marks omitted).

### i.  Plaintiffs' Breach Of Contract Claim Is Timely.

The Amended Complaint alleges that Plaintiffs were informed in September 1996 that DOE would not honor the implied-in-fact contract, by allowing Plaintiffs' MEPP benefits to be reduced when Plaintiffs were eligible for retirement. Am. Compl. ¶ 77. Plaintiffs argue that DOE's conduct in September 1996 was a repudiation of the implied-in-fact contract, not a breach. Pl. Reply at 24.

The United States Supreme Court has held that the federal government's renunciation of a contractual duty, before the time fixed in the contract for performance, is a repudiation that "ripens into a breach prior to the time for the performance[,] only if the promisee elects to treat it as such." *Franconia Assocs.*, 536 U.S. at 143 (internal quotation marks and citations omitted). Therefore, a claim for repudiation does not accrue under section 2501, unless and until the injured party elects to treat that repudiation as a breach. *Id.* at 144. This rule was discussed in *Franconia Associates*, where the enactment of the Emergency Low Income Housing Preservation Act, 42 U.S.C. § 5301 ("ELIHPA"), imposed new conditions on the prepayment of certain government loans. *Id.* The United States Supreme Court held this to be a repudiation, instead of a breach of contract, so that the cause of action did not accrue until the borrowers attempted to tender prepayment and were rejected. *Id.*

In this case, DOE set the date of performance as Plaintiffs' respective retirement dates. Therefore, DOE's alleged September 1996 statement that Plaintiffs' MEPP benefits would be reduced in the future evidenced DOE's intent to breach the contract—but only when Plaintiffs retired. Plaintiffs retired within six years of when the July 25, 2016 Complaint was filed. Am. Compl. ¶¶ 90–109. The Government responds that the Amended Complaint also alleges that DOE breached multiple other provisions of the MEPP and, as such, DOE's September 1996 conduct was not "wholly anticipatory." Gov't Reply at 11.

The United States Court of Appeals for the Federal Circuit has held that "the statute of limitations begins to run immediately," if an anticipatory repudiation is accompanied by contractual nonperformance. *See Kinsey*, 852 F.2d at 558. In this case, however, Plaintiffs' claims are based, in part, on DOE's breach of an alleged implied-in-fact contract, *not* an anticipatory repudiation of the terms of the MEPP.

For these reasons, the court has determined that the Amended Complaint's claim for breach of an implied-in-fact contract is timely and not barred by the statute of limitations.

### ii.     Plaintiffs' Takings Clause Claim Is Time-Barred.

The Amended Complaint alleges DOE's breach of its implied-in-fact contract resulted in a taking of Plaintiffs' pension rights in violation of the Tucker Act and the Fifth Amendment to the United States Constitution.  Am. Compl. ¶¶ 137, 140–41.

The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)."  *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Therefore, Plaintiffs' claim cannot rest on a violation of the Tucker Act alone.  *See Jan's Helicopter Serv., Inc.*, 525 F.3d at 1308 ("If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.") (internal quotation marks omitted).  In this case, Plaintiffs' takings claim rests on the Takings Clause of the Fifth Amendment.  *Id.* at 1309 ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction.").

As such, the Amended Complaint alleges that a taking occurred when the "Department of Energy, [exercising] Executive [authority] under Article II of the Constitution, re-shaped [Plaintiffs'] post-retirement benefits . . . without adequate compensation [in September 1996.]" Am. Compl. ¶¶ 77, 137. ("In September of 1996 . . . [Lockheed], acting on behalf of the Government, told the Class Members that upon their retirement, they would not receive the retirement medical benefits, retirement death benefits, and retirement pension compensation promised to them by the Government at retirement[.]").  Since the statute of limitations is calculated from September 1996, Plaintiffs' Takings Clause claim became untimely in September 2002.  *See* 28 U.S.C. § 2501.  Yet, Plaintiffs did not file a Complaint in the United States Court of Federal Claims until July 25, 2016.  Am. Compl. ¶ 1.

Plaintiffs attempt to overcome the statute of limitations by arguing that the Government is equitably estopped from asserting that Plaintiffs' claims are untimely, because "the Government told the Plaintiffs that they could not dispute their post retirement benefits until they retired."  Pl. Resp. at 26 (citing Compl. ¶ 89).  The United States Supreme Court, however, has held that the Tucker Act's statute of limitations is "jurisdictional and not susceptible to equitable tolling."  *John R. Sand & Gravel Co.*, 552 U.S. at 136 (internal quotation marks and corrections omitted).

For these reasons, the court has determined that Plaintiffs' Takings Clause claim is barred by the statute of limitations.

### b.     Whether The Court Otherwise Has Subject Matter Jurisdiction To Adjudicate Plaintiffs' Implied-In-Fact Contract Claim.

The Amended Complaint alleges that: (1) an implied "contract in fact" existed between Plaintiffs and DOE; (2) DOE breached that contract by changing the benefits that Plaintiffs were entitled to receive on retirement under the MEPP; and (3) Plaintiffs are entitled to damages.  The United States Court of Appeals for the Federal Circuit has held that,

> [i]n determining whether the Court of Federal Claims has [subject matter] jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.

*Jan's Helicopter Serv., Inc.*, 525 F.3d at 1309.

In this case, Plaintiffs' claim is founded on a claim for breach of an implied-in-fact contract with DOE. Am. Compl. ¶¶ 28–109. A breach of contract claim against the Government is a money-mandating source. *See Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (holding in a breach of contract case that, "the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary."); *see also Trauma Serv. Grp., Inc. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (a "well-pleaded allegation" of an express or implied-in-fact contract "is sufficient to overcome a challenge to jurisdiction.").

For these reasons, the court has determined that it has subject matter jurisdiction to adjudicate Plaintiffs' breach of contract claim.

### c. Whether Plaintiffs Have Stated A Claim For Breach Of An Implied-In-Fact Contract On Which Relief May Be Granted.

The Amended Complaint alleges an implied "contract in fact" existed between DOE and Plaintiffs and that DOE breached that contract by changing the amount of benefits to which Plaintiffs are entitled to receive under the MEPP. Am. Compl. ¶¶ 24–109.

As a matter of law, an implied-in-fact contract is "inferred . . . from [the] conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923). An implied-in-fact contract requires the court to find that "surrounding circumstances" show: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority on the part of the Government representative to bind the Government in contract. *See City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (discussing the factors required to find an implied-in-fact contract with the Government). In other words, "the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs." *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

As a threshold condition for contract formation, "there must be an objective manifestation of voluntary, mutual assent." *Anderson*, 344 F.3d at 1353 (citing RESTATEMENT § 18).[7] Mutuality of intent to contract is evidenced by the existence of an offer and a reciprocal

_____

[7] Common law governs a contractual relationship between the United States and a private party. *See United States v. Winstar*, 518 U.S. 839, 871–72 (1996) ("In evaluating the

acceptance. *Id.* (citing *Estate of Bogley v. United States,* 206 Ct. Cl. 695, 514 F.2d 1027, 1032 (1975) ("It is fundamental that in order to have a valid contract one party must make an offer that is a promise which is conditional upon receipt by the offeror of some act or promise from the offeree, and the offer must be accepted as to all its terms by the offeree."); *see also* RESTATEMENT § 22(1) ("The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.").

An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT § 24. Acceptance is "a manifestation of assent to the terms [of the offer] made by the offeree in a manner invited or required by the offer." RESTATEMENT § 50. In addition, there must be a "lack of ambiguity in offer and acceptance," if a contract is to exist. *See Anderson*, 344 F.3d at 1353.

In this case, the Amended Complaint alleges that an implied-in-fact contract between Plaintiffs and the Government was formed "in part" by: "virtue of the MEPP itself" (Am. Compl. ¶ 32); "the Government's solicitation of the Hanford site contract" (Am. Compl. ¶ 36); "the regulations of an executive agency, specifically Department of Energy Order 350.1" (Am. Compl. ¶ 28); "other actions and policies of the Government" (Am. Compl. ¶ 26); "other actions and policies of . . . agents acting on behalf of the Government" (Am. Compl. ¶ 26); and an employment offer letter from Lockheed with an "implicit promise that [Lockheed] employees would continue the retirement benefits enjoyed by Plaintiffs with their prior employer" (Am. Compl. ¶ 67).

None of these "surrounding circumstances," however, evidence "a clear indication of intent to contract" by DOE. *See D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003) ("Although a contract may arise as a result of the confluence of multiple documents, there must still be a clear indication of intent to contract and the other requirements for concluding that a contract was formed."). First, the MEPP does not evidence any DOE intent to contract with Plaintiffs, because DOE was not a party to the MEPP. Am. Compl. ¶¶ 25, 34 (the MEPP was created by WHC in 1987 "to assure that the Participant receives a benefit at Normal Retirement Date which is reflective of his Years of Service on the Hanford Reservation"). Although the Amended Complaint later alleges that "the United States Department of Energy has actually controlled the terms, administration, and operation of the MEPP," Am. Compl. ¶ 40, that allegation is a legal conclusion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Second, the Solicitation does not evidence any DOE intent to contract with Plaintiffs, because the Solicitation was an offer conveyed by DOE to potential bidders on the Project Hanford Management Contract. Am. Compl. ¶ 36.

---

relevant documents and circumstances, we have, of course, followed the Federal Circuit in applying ordinary principles of contract construction and breach that would be applicable to any contract action between private parties.").

Third, DOE Order 350.1 does not evidence an intent to contract with Plaintiffs, because it is a "regulation of an executive agency," and "regulatory proclamations are insufficient to create contractual obligations."  *See Anderson*, 344 F.3d at 1357; *see also D & N Bank*, 331 F.3d at 1378–79 ("performance of . . . regulatory or sovereign functions does not create contractual obligations").

Fourth, the Amended Complaint's allegation that an implied-in-fact contract was formed, in part, by "other actions and policies of the Government and agents acting on behalf of the Government" (Am. Compl. ¶ 26), is not sufficient to satisfy Plaintiffs' "obligation to provide the grounds of [their] entitlement to relief." *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks and corrections omitted); *see also id.* ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  The Amended Complaint does not allege what these "other actions" are.

Finally, Lockheed's Offer Letter does not evidence DOE's intent to contract with Plaintiffs.  Am. Compl. ¶ 64.

For these reasons, the court has determined that the Amended Complaint failed to allege facts sufficient to establish that DOE entered into an implied-in-fact contract with Plaintiffs.

## IV.   CONCLUSION.

For these reasons, the Government's November 17, 2016 Motion To Dismiss is granted. The Clerk of the United States Court of Federal Claims is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Susan G. Braden

**SUSAN G. BRADEN**
**Chief Judge**